**MARK, Appellant,**

v.

**MELLOTT MANUFACTURING COMPANY, INC., Appellee.***

[Cite as *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 94 CA 2011.

Decided Sept. 28, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 75 Ohio St.3d 1411, 661 N.E.2d 759.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy; Ray, Todaro & Alton Co., L.P.A., Frank A. Ray* and *Frank Todaro,* for appellant.

*Law Office of James P. Connors* and *James P. Connors,* for appellee.

---

PETER B. ABELE, Presiding Judge.

This is an appeal from a judgment entered by the Ross County Common Pleas Court following a jury trial in a product liability action brought by Tommy L. Mark, plaintiff below and appellant herein, against Mellott Manufacturing Company, Inc., defendant below and appellee herein. Appellant alleged that while he was working at the A & F Lumber Company in Bainbridge, Ohio, on January 11, 1983, he suffered the traumatic amputation of his left arm and other injuries as a result of sawmill equipment defectively designed and manufactured by appellee.

Appellant assigns the following four errors [1]:

First Assignment of Error:

"The trial court erred to the prejudice of appellant Mark by permitting use of the OSHA citations, as well as the information on 'employer knowledge' contained in the OSHA reports, which improperly misled and confused the jury."

Second Assignment of Error:

"The trial court erred to the prejudice of Mr. Mark by permitting the use of the OSHA citations when the use of those citations improperly imposed collateral estoppel on Mr. Mark."

Third Assignment of Error:

"The trial court erred to the prejudice of appellant Mark by permitting the use of the OSHA citations and investigation reports where the use of the OSHA citations and investigation reports was unduly prejudicial to Mr. Mark, the OSHA citations and investigative reports were irrelevant to the issues in the case, and the investigative reports improperly contained hearsay."

Fourth Assignment of Error:

"The trial court erred to the prejudice of appellant Mark by permitting an instruction on superseding/intervening cause. A superseding/intervening cause

---

1. We note that during oral argument appellant withdrew his Fifth Assignment of Error, which provided as follows:

"The trial court erred to the prejudice of appellant Mark by permitting introduction of safe history evidence. Safe history evidence is improper and irrelevant in the product liability case."

defense does not apply where the alleged superseding/intervening cause involves the failure of the employer to guard when the product design defect involves the manufacturer's failure to guard."

On December 10, 1984, appellant filed his first complaint in this action against appellee and three unknown defendants. On April 19, 1985, appellant identified one of the three unknown defendants as the Frick Company. On February 13, 1986, the trial court granted summary judgment in favor of Frick. We reversed that summary judgment in *Mark v. Mellott Mfg. Co., Inc.* (June 5, 1987), Ross App. No. 1308, unreported, 1987 WL 12454.

On March 1, 1988, the trial court once again granted summary judgment in favor of Frick. We affirmed that summary judgment in *Mark v. Mellott Mfg. Co., Inc.* (Sept. 14, 1989), Ross App. No. 1494, unreported, 1989 WL 106933. Appellant appealed to the Ohio Supreme Court. In *Mark v. Mellott Mfg. Co., Inc.* (1991), 57 Ohio St.3d 601, 564 N.E.2d 700, the Ohio Supreme Court dismissed the appeal as having been improvidently allowed.

Appellant filed his third amended complaint on June 29, 1992. The complaint listed appellee as the sole defendant in the action. The complaint alleged that appellant suffered the traumatic amputation of his left arm and other injuries as a direct and proximate cause of appellee's "defective design of an unguarded rotating shaft of a hydraulic power source and mandrel coupling."

On August 6, 1993, appellant filed a motion for separate trials on the liability and damages issues. On September 28, 1993, the trial court granted the motion for separate trials and set the liability trial for February 28, 1994.

On February 16, 1994, appellant filed a motion *in limine* to exclude certain records of the Occupational Safety and Health Administration's ("OSHA") investigation of the accident. In a memorandum accompanying the motion, appellant noted that because the sawmill equipment involved in the accident had been sold and cannot be located, appellant deposed John T. Phillips, one of two OSHA employees who conducted the investigation after the accident. During the videotaped deposition, appellant asked Phillips to identify two schematic drawings of the pump head, mandrel coupler, mandrel shaft, and various measurements that he had made during the investigation. Phillips testified that his drawings accurately portrayed the machinery involved in the accident.

During cross-examination, appellee asked Phillips to identify ten additional documents contained in the OSHA investigation file concerning the accident. In

an affidavit attached to appellant's motion *in limine*, Phillips described the ten OSHA documents as follows [2]:

1. Informal Settlement Agreement between OSHA and the A & F Lumber Company

2. Description of Corrections

3. OSHA Citations and Penalty

4. Safety Requirements for Sawmills, ANSI–02.1–1968

5. OSHA Safety and Health Accident Report by Robin Medlock and John Phillips

6. OSHA Description of Accident

7. Report of Closing Conferences Between John Phillips and Robin Medlock on Behalf of OSHA and A & F Lumber Company

8. OSHA Narrative and Rough Draft Diagram of Headsaws and Revolving Shaft

9. OSHA Worksheet, 3 Items, 6 Pages

10. Essentials of Lockout Program

In his memorandum in support of his motion *in limine*, appellant raised five arguments in support of excluding the above OSHA documents. On February 24, 1994, appellee filed a memorandum directly responding to each of the five arguments.

On the same day appellant filed his motion *in limine*, appellee filed a "motion *in limine* to admit evidence of OSHA violations and investigation file." Appellee noted that appellant intends to introduce at trial (1) the schematic drawings contained in the OSHA investigation file; (2) OSHA regulations; (3) regulations of the American National Standards Institute ("ANSI"); and (4) other federal regulations that appellant listed as proposed exhibits. Appellee argued that appellant's intentions in this regard "call into question the continuing sincerity of appellant's objections" to the use of the OSHA documents.

On February 25, 1994, the trial court held a hearing on appellant's motion *in limine* and appellee's "motion *in limine* to admit evidence." At the hearing, the trial court addressed each of the five arguments appellant raised in his memorandum in support of his motion *in limine*. Next, we will describe each of those five

---

2. We note that the eighth and ninth documents include rough diagrams of the equipment involved in the accident. These rough diagrams differ in quality from the schematic drawings mentioned earlier. Although appellant sought admission of the schematic drawings, appellant opposes admission of the rough diagrams.

arguments, together with appellee's response and the trial court's *in limine* ruling on each of the arguments.

In his first argument, appellant asserted that Evid.R. 408(2), the rule concerning compromises and offers to compromise, bars the first OSHA document, the informal settlement agreement between OSHA and the A & F Lumber Company. In response, appellee argued that because no valuable consideration was involved in the informal settlement agreement and because Evid.R. 408 provides that it "does not require exclusion when the evidence is offered for another purpose," Evid.R. 408(2) does not bar the first OSHA document which was offered for the purpose of proving proximate cause. The trial court, noting that the employer's negligence is at issue in the case *sub judice* as a possible superseding or intervening cause, barred admission of the first OSHA document.

In his second argument, appellant asserted that Evid.R. 407, the rule concerning subsequent remedial measures, bars the second, seventh, and tenth OSHA documents. In response, appellee argued that Evid.R. 407 should not bar evidence of subsequent remedial measures taken by an employer in a product liability case premised upon strict liability in tort. The trial court, again noting that the employer's negligence *is* at issue in the case *sub judice* as a possible superseding or intervening cause, barred the second, seventh, and tenth OSHA documents.

In his third argument, appellant asserted that Evid.R. 410, the rule concerning inadmissibility of pleas, offers of pleas, and related statements, bars the third OSHA document, which describes the OSHA citations and penalty levied against A & F Lumber. Appellee responded that because the third OSHA document addresses the proximate cause issue, Evid.R. 410 does not bar the third OSHA document. The trial court held that the third OSHA document would be admitted.

In his fourth argument, appellant asserted that Evid.R. 402 bars the fourth OSHA document, the ANSI regulation titled "Safety Requirements for Sawmills, ANSI–02.1–1968," unless a foundation establishes the relevance of the document. In response, appellee agreed with appellant. The trial court held that notwithstanding appellee's agreement with appellant, the ANSI regulations would be admitted, assuming a proper foundation establishes the relevancy of the regulations.

In his fifth argument, appellant asserted that because the identities of witnesses in the fifth, sixth, eighth, and ninth OSHA documents have been obliterated, Evid.R. 403(A), which excludes evidence whose "probative value is substantially outweighed by the danger of unfair prejudice," bars those documents. Appellee responded by noting that the information in the fifth, sixth, eighth, and ninth OSHA documents addresses the proximate cause issue. The trial court

stated that those documents would be admitted, provided the documents are edited to delete the hearsay statements in the documents.

The trial court began the liability trial as scheduled on February 28, 1994. The parties stipulated that appellant suffered injuries, including the traumatic amputation of his left arm, on January 11, 1983, during the course of his employment at the A & F Lumber Company in Bainbridge, Ohio. The parties' stipulation describes the events leading to the injuries as follows:

"On January 11, 1983, Plaintiff Tommy L. Mark's clothing probably became entangled in the protruding set screws of the rotating mandrel coupler which was connected to the hydraulic pump head of the equipment at the lower mill of A & F Lumber Co. in Bainbridge, Ohio. After the clothing initially became entangled on the set screws of the mandrel coupler, the clothing wound onto the connected rotating mandrel, or shaft.

"As a direct and proximate result of the entanglement of Mr. Mark's clothing into the rotating mandrel coupler, Mr. Mark suffered immediate traumatic amputation of his left arm, dermal burns of the flank and thigh, and fracture of the right arm."

At this juncture we note that because the jury answered an interrogatory stating that the equipment involved in the accident was manufactured by appellee, we will omit from our recitation of the evidence any testimony addressing the issue of whether the mandrel coupler involved in the accident was manufactured by appellee.

During opening statements, appellant referred to the American Safety Code, effective in 1953, which requires designers to provide barrier guards. Appellant stated that appellee failed to provide a barrier guard with its equipment, and failed to mention a barrier guard in its installation instructions. Appellant further stated that his expert witness would testify that appellee should have foreseen that someone would have substituted the flush hex screws supplied with the equipment with the protruding set screws that caught appellant's clothing in the rotating mandrel coupler.

Appellee, during opening statements, referred to the OSHA investigation conducted after the accident. Appellee also referred to the fact that OSHA had cited the employer in 1980 and again in 1983 for failure to guard equipment. We note appellant did not object to the fact that appellee mentioned the OSHA documents and the OSHA citations during opening arguments.

Appellant presented several witnesses who worked with him at the sawmill. The witnesses testified that the mandrel shaft extended outside the wall of the building and over a sump hole located below the mandrel shaft. The sawmill employees periodically maneuvered a five-gallon bucket under the rotating man-

drel shaft and rotating mandrel coupler in an effort to dip water out of the sump hole. The sawmill foreman testified that he let the employees dip the water out of the sump hole in this manner. Appellant testified that although he has no memory of the accident, the only reason he would have been near the rotating mandrel shaft and the rotating mandrel coupler was to dip water out of the sump hole.

OSHA employee John T. Phillips testified by videotape deposition that he conducted the OSHA investigation after the accident in question. On direct examination, he noted that the OSHA report contains his personal observations of the scene of the accident. He testified that the mandrel shaft, the mandrel coupler, and the hydraulic pump used to power the log turner extended twenty-two inches out the side of the building. Three set screws extended seven-eighths of an inch beyond the body of the mandrel coupler. The mandrel shaft was twelve inches from the sump hole and thirty-six inches above the surface of the ground.

On cross-examination, Phillips testified that he recommended that OSHA should issue citations to appellant's employer for three OSHA violations, including a violation of Section 1910.219, Title 29, C.F.R. That section requires guarding of all exposed parts of horizontal shafting seven feet or less from the floor or working platform. OSHA issued the citations as recommended.[3]

John H. Lyons, the president of Lyons Equipment, testified that on July 29, 1974, the Hollon Lumber Company in Bainbridge, Ohio ordered a model 4A log turner and a hydraulic power source with a mandrel coupler, all designed and manufactured by appellee. Oldham Hollon testified by deposition that he sold the same equipment to appellant's employer later in 1974.

---

**3.** At this juncture, we note that the trial transcript of the version of the Phillips videotaped deposition shown to the jury includes no objections. We know, however, that the parties made objections during the course of the Phillips videotaped deposition.

At the February 25, 1994 pretrial hearing, the trial court ruled on objections that the parties made during the course of the Phillips videotaped deposition. The court explained as follows:

"THE COURT: What I'm doing is writing on the Court's copy of the [Phillips videotaped deposition] transcript my rulings.

"MR. RAY: Alright.

"THE COURT: And striking, as appropriate, language so that this [the court's copy of the transcript] can be given to the video, or, is this, this coming in my [*sic*] video, right?

"MR. RAY: Yes.

"THE COURT: So, the videographer can follow along, blank out stricken language and go ahead and this is the record for the Court of Appeals.

"MR. RAY: Very good."

We note that the record transmitted on appeal does not include the court's copy of the transcript of the Phillips videotaped deposition.

Consequently, we do not know exactly what objections appellant made during the Phillips deposition. Because appellee makes no allegation that appellant failed to raise objections, however, we will assume appellant raised all pertinent objections.

On cross-examination, Lyons testified that appellee normally supplied recessed hex head set screws with its equipment. Lyons further testified that there is no standard way to erect or construct a sawmill. Each sawmill contains parts ordered from various manufacturers. The sawmill owner designs the configuration of the various parts.

Appellant cross-examined Samuel H. Mellott during appellant's case-in-chief. Samuel H. Mellott testified that he agrees that a rotating mandrel coupler is a foreseeable hazard to users of the equipment. He further testified that the installation instructions that appellee supplied with the equipment said nothing about how to guard the equipment. If a customer called with specifications, appellee would have been happy to build a guard. Samuel H. Mellott explained as follows the reasons why appellee did not supply guards with the equipment it sold:

"MR. TODARO: It's fair to say that you're in general testifying that because you don't understand the configuration of how this equipment will be installed, you can't supply a guard?

"MR. SAMUEL MELLOTT: Well, there's a couple reasons. The main one, is as I told you in the deposition, that there are other, we're not supplying the mandrel shaft and there're shivs and pulleys, there's too other many, too many other factors that are involved here that are out of our control. If we did try to supply a guard, it could be a hazard in itself. I explained to you, that to you at length in the shop. But, anyhow, the gist of my comment is, you know, there are, there are other things on the mandrel shaft in nearly [every] other application. These things can be anywhere. They can be any size. Any they can be in proximity to the coupler to where it just, either it wouldn't go on at all or it, you know, could create a hazard in and of itself."

When asked whether appellee did any research to learn how its equipment was being installed by customers, Mellott testified as follows:

"Well, I've seen any number of them installed. I've talked to, you know, many people over that twenty year period and aside from this, I don't know of anybody that had any problem with it."

Mellott further testified that he knew of no other accidents involving appellee's equipment, which he noted has been manufactured since the late 1950s.

Appellant's employer's owner, John Free, testified that he purchased the equipment involved in the accident from Oldham Hollon. On cross-examination, Free testified that he had received an OSHA citation in 1980, prior to the accident. When asked why the mandrel shaft in question was not guarded, Free replied, "it was out of the end of the building." He further explained, "we covered everything we thought was necessary to cover."

During appellant's case-in-chief, appellant cross-examined Hayes Richard Mellott, appellee's president and the inventor of the log-turning apparatus. He testified that appellee provided recessed hex head set screws with the mandrel coupler. He further testified that appellee placed warning labels on its equipment stating that additional guarding may be necessary and would be the responsibility of the owner. The warning label stated in pertinent part in capital letters as follows:

"THE NECESSITY FOR SHIELDS OR GUARDS VARIES WITH INDIVIDUAL INSTALLATIONS. THE OWNER OR USER MUST PROVIDE THE REQUIRED SAFETY GUARDS NOT FURNISHED WITH THIS EQUIPMENT.

" * * *

"DO NOT OPERATE THIS EQUIPMENT WITHOUT THE REQUIRED SAFETY GUARDS."

Hayes Richard Mellott noted that appellee sold a mandrel coupler designed to be placed on the end of a mandrel shaft. The purchaser must join the mandrel coupler to the mandrel shaft. He further testified that it's "the owner's responsible for guarding the mandrel [shaft], there's no way he could possibly avoid guarding the [mandrel] coupling."

Appellant's final witness, George Leonard Smith, Jr., testified that he serves as chairman of the Department of Industrial and Systems Engineering at Ohio State University. In his opinion, the equipment in the case *sub judice* was dangerously defective because "there is no guarding for the rotating portion of the mandrel." When asked whether the benefits of the design outweigh the risks of the design, Smith testified that "the cost of adding guarding to this arrangement is insignificant in comparison to the potential loss." Smith further testified that "it's not an acceptable design principle to expect an end user * * * to come up with a satisfactorily engineered guard."

On cross-examination, Smith testified that he has no sawmill experience, has no sawmill-related experience, has never used any equipment in a sawmill, has never designed a sawmill, has never constructed or assembled a sawmill, and is not familiar with the manufacture of sawmills. Smith further testified that he never consulted with anyone regarding the incorporation of a log-turner into an existing sawmill. He noted that he is not aware of any manufacturer who has provided a guard with similar equipment or who has designed safer equipment. Smith admitted that it is possible that a design which provides guarding might conflict with other guarding on the mandrel shaft.

When asked why he did not mention OSHA during his testimony, Smith explained that OSHA applies to employers, not to designers. Smith, however,

testified that OSHA regulation 1910.219 is identical to the ANSI standard governing mechanical power train apparatus and requiring guarding of horizontal shafting. Smith explained that the OSHA regulation was adopted from the ANSI standard. Appellant did not object to Smith's testimony regarding the OSHA regulation and the ANSI standard.

With regard to the issue of the screws on the mandrel coupler, Smith testified on direct examination that it was foreseeable and "completely understandable" that the end user would substitute the recessed hex head screws supplied by appellee with protruding screws that would permit more torque. On cross-examination, Smith testified that the substitution was a substantial modification that would make the equipment more hazardous.

Appellee presented five witnesses. Jeffrey L. Beck testified that he serves as branch manager for Lyons Sawmill and Logging Equipment and Supplies, Inc. in Circleville, Ohio. He noted that when he sells equipment manufactured by appellee, he does not contact appellee and advise appellee how the equipment will be installed. Beck explained in pertinent part as follows:

"No, because log turner installation is a fairly common item and there's no advising back and forth between dealer and manufacturer about how that equipment will be installed."

Beck further noted that in the sawmill industry, buildings are often built after the equipment is installed. Beck testified that guards must be customized to the installation:

"The final configuration of that mandrel shaft, its height above the ground, surfaces to connect those guards to, to the length, height, width of that guard, it's impossible to determine how that equipment's final assembly will look and then to adequately guard it. It would be a waste of natural resources to try to bend metal and supply a guard with parts that are sent in this configuration here as guarding."

When asked whether it would be hazardous for appellee to provide a universal guard, Beck testified that a universal guard might be a hazard. Beck further testified that "it's industry standard for the owner of the mill * * * to be the one responsible for final guarding of any turning shafts within the sawmill."

Samuel H. Mellott testified that appellee cannot provide a guard that will work in all applications. He noted that a universal guard might conflict with some installations and create a hazard in other installations.

Neil W. Johns, an engineer from Waupaca, Wisconsin, who is familiar with sawmills, testified that even when a guard is furnished, the installer has an obligation to look at the guard and make sure that it is adequate for the installation. Johns further testified as follows:

"Some time [*sic*] somebody builds such a fancy guard that it takes care of all the guarding problems but it is such a maintenance headache to get at the coupling to service it that you, they'll end up building their own guard."

Johns testified that a guard not suited to a particular installation might be a worse hazard than unguarded equipment. Johns noted that the installer should be responsible for guarding the equipment.

Donald L. Helfrick testified by videotaped deposition that he is a manufacturer of sawmill equipment.[4] When asked whether he ever saw any sawmill installation in which the manufacturer provided the guarding, Helfrick responded "no." When asked whether he ever saw any guarding provided by anyone other than the sawmill owner, Helfrick responded "no."

Appellee's final witness, Hayes Richard Mellott, testified that he would adopt the opinions expressed by his son Samuel H. Mellott and by Neil W. Johns. He further testified that appellee certainly would have provided a guard with its equipment if providing a guard was feasible.

The jury returned a verdict in favor of the defendant and answered two special interrogatories. In the first special interrogatory, the jury found that the equipment involved in the accident was sold by appellee. In the second special interrogatory, the jury found that the equipment in question was not defectively designed at the time the equipment left appellee's possession. The trial court entered judgment in favor of appellee.

Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts that the trial court erred by permitting use of the OSHA citations, as well as the information on "employer knowledge" contained in the OSHA reports. Appellant argues that the use of the OSHA records in the case *sub judice* misdirected the jury's attention away from the proper issue of whether appellee could guard the equipment to the issue of who should guard the equipment. Appellant also argues that the employer's violation of OSHA regulations has no bearing on appellee's responsibility. Appellant claims that the OSHA records interject issues of fault into this strict liability case, and thus "deflect blame from appellee to the employer."

**4.** We note that the record transmitted on appeal does not include a paper copy of the Helfrick deposition. Although the trial transcript includes the Helfrick deposition, we do not know what objections, if any, appellant raised during the course of the Helfrick deposition.

We will begin our discussion by setting forth the appropriate standard for determining whether appellee is liable for a defective design under the theory of strict liability in tort. We note that the standard has changed twice since the date of the accident in the case *sub judice*.

The parties agreed that a risk-benefit standard must be applied to determine whether appellee's product was defective under Ohio product liability law. The parties both asked the trial court to give the risk-benefit jury instruction from Ohio Jury Instructions (1993) 194, Section 351.01(1)–(3). The trial court gave the requested instruction.[5]

The accident in the case *sub judice* occurred on January 11, 1983. At that point in time, *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, the seminal case governing product liability law in Ohio, held:

"A product design is in a defective condition if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or *if the benefits of the challenged design do not outweigh the risk inherent in such design.*" (Emphasis added.) *Id.* at syllabus.

In *Knitz*, the court elaborated on the risk-benefit standard only as follows:

"Factors relevant to the evaluation of the defectiveness of the product design are the likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and economical feasibility of an improved design." *Id.*, 69 Ohio St.2d at 466, 23 O.O.3d at 407, 432 N.E.2d at 818.

After the accident in the case *sub judice*, the Ohio Supreme Court refined the risk-benefit standard as follows:

"In determining whether a product design is in a defective condition, a single, two-pronged test should be used: under the consumer expectation standard prong, a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; *under the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria,*

---

5. The jury instruction told the jury to consider the following list of factors when determining whether the risks outweigh the benefits:
 "(1) The likelihood that the product design will cause injury;
 "(2) The seriousness or gravity of the danger posed by the design;
 "(3) The mechanical feasibility or workability of a safer or alternative design at the time of manufacture;
 "(4) The financial cost of an improved design;
 "(5) New or additional harms that may result from another design."

*that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design. (Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460 [23 O.O.3d 403, 432 N.E.2d 814], approved and followed.)" (Emphasis added.) *Cremeans v. Internatl. Harvester Co.* (1983), 6 Ohio St.3d 232, 6 OBR 302, 452 N.E.2d 1281, syllabus.

The court in *Cremeans* did not specify what "relevant criteria" can be used to determine whether the product design is "in a defective condition." The court emphasized that the factors to be applied will vary with the facts of each case:

"As this court refrains from setting forth an exclusive test of relevant factors, it likewise refrains from according any priority to these factors. The appropriate factors, and the weight allocated to each factor, will vary with the facts of each case." (Footnote omitted.) *Id.* at 235, 6 OBR at 305, 452 N.E.2d at 1284.

The Ohio General Assembly codified Ohio's product liability law in R.C. 2307.71 through 2307.80, effective on January 5, 1988. In *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 271, 617 N.E.2d 1068, 1073, the court noted that although the statutes are not technically applicable to causes of action arising prior to January 5, 1988, the statutes "lend insight" into pre–1988 causes of action. We will examine the statutes to determine whether they lend insight into our resolution of the case *sub judice.*

█ R.C. 2307.73(A) provides, *inter alia,* that a manufacturer is liable for compensatory damages on a product liability claim if the claimant establishes, by a preponderance of the evidence, that the product in question was defective in design as described in R.C. 2307.75 and that the defective aspect of the product was a proximate cause of the claimant's injuries. R.C. 2307.75(A), the risk-benefit statute, provides that a product is defective if either of the following applies:

"(1) When it left the control of its manufacturer, *the foreseeable risks* associated with its design or formulation as determined pursuant to division (B) of this section *exceeded the benefits* associated with that design or formulation as determined pursuant to division (C) of this section;

"(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (Emphasis added.)

In paragraph (B) of the statute, the legislature set forth the following noninclusive list of factors for a trier of fact to consider when determining the risks associated with a product:

"(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

"(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

"(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

"(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer."

In paragraph (C) of the statute, the legislature set forth a similar noninclusive list of factors for a trier of fact to consider when determining the benefits associated with a product:

"(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

"(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

"(3) The nature and magnitude of any foreseeable risks associated with such an alternative design or formulation."

■ We find that *Knitz, Cremeans,* and R.C. 2307.75(A) all lend insight into the resolution of this assignment of error. All three authorities require consideration of the risks and benefits of certain designs. The challenged design should not be considered in a vacuum, apart from the other facts of the case. In *Knitz,* the Ohio Supreme Court noted that trial courts must consider the likelihood that the product design will cause injury. The likelihood that a product design will cause injury encompasses facts beyond a mere examination of the equipment in question. For instance, the fact that OSHA regulations require sawmill employers to guard rotating mandrel shafts and couplers arguably decreases the likelihood that the lack of manufacturer-supplied guards would cause injury. We note that R.C. 2307.75(B)(4) requires consideration of the extent to which the challenged design "conformed to *any* applicable public or private product standard that was in effect when the product left the control of its manufacturer." (Emphasis added.) We further note that in *Cremeans,* the court purposely cast a broad net to permit a case-by-case analysis of what factors might be relevant to the risk-benefit analysis in any given case.

■ A plaintiff in a product liability case must not only prove that the risks of the challenged design outweigh the benefits of the design, but also must prove that the design proximately caused the plaintiff's injuries. In *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, syllabus, the court held:

"In a products liability case based upon the theory of strict liability in tort, the defense of intervening causation may be invoked to avoid liability where the intervening cause is unforeseeable and is the proximate cause of the injury or damage. Liability attaches to the person or persons whose acts or omissions proximately cause the injury or damage."

In *Volter v. C. Schmidt Co.* (1991), 74 Ohio App.3d 36, 598 N.E.2d 35, the First District specifically held that OSHA documents are admissible to prove that the employer, rather than the manufacturer, proximately caused the injury:

"Given our analysis of the Supreme Court of Ohio's reasoning in *R.H. Macy & Co., supra,* however, we do not believe that evidence of the employer's OSHA violations can be excluded from a factfinder's consideration of proximate cause and whether the employer's omissions 'completely' eliminated the effect of any defect in the machine produced by Cincinnati, Inc. * * *" *Id.,* 74 Ohio App.3d at 42, 598 N.E.2d at 39.

Appellee relies upon *R.H. Macy & Co., Volter,* and several other cases relevant to the admissibility of OSHA regulations and investigative reports. In *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 151, 566 N.E.2d 1203, 1209, the court held that the question of who proximately caused the injury in a product liability case is a jury question. In *Felden v. Ashland Chem. Co., Inc.* (1993), 91 Ohio App.3d 48, 631 N.E.2d 689, the Eighth District held that the defendant's violation of OSHA regulations was directly related to the defendant's knowledge of unsafe working conditions. In *Smith v. Raymond Co.* (Oct. 25, 1990), Cuyahoga App. No. 57670, unreported, 1990 WL 161996, the Eighth District admitted OSHA regulations, OSHA investigation records, and ANSI regulations, noting that "it is still axiomatic that in every products liability action the plaintiff must prove that the alleged defect was the proximate cause of his injury."

Appellee also cites *Knitz v. Minster Machine Co.* (Feb. 9, 1987), Lucas App. No. L–84–125, unreported, 1987 WL 6486. We note that in *Knitz* the Sixth District acknowledged that the introduction of OSHA regulations, which apply to employers and not manufacturers, "casts an unnecessary cloud over the issue of the defective design of the product." The Sixth District nevertheless held that the OSHA records are admissible in the following respects: (1) to address the issue of whether the employer misused the product; (2) to rebut a plaintiff's assertion that the product was unreasonably dangerous; and (3) to demonstrate the feasibility of the product's design. The Sixth District, however, cautioned that the OSHA records must not be used "to misdirect the jury's attention."

In the case *sub judice,* we do not believe that the OSHA records were used to misdirect the jury's attention. We agree with appellee that under the facts of this case, the OSHA records are relevant to a consideration of whether an

intervening or superseding cause, rather than a defectively designed product, proximately caused appellant's injuries. The question of who proximately caused the injury in a product liability case is a jury question. *Cremeans, supra.* The jury, in order to make a proper determination of the proximate cause issue, must hear all relevant evidence.

We note that the admission or exclusion of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence cannot be reversed absent a showing of an abuse of that discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056; *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. In *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1183, the court wrote:

"As the court has defined this standard, 'the term "abuse of discretion" * * * connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *.' " See, also, *Worthington v. Worthington* (1986), 21 Ohio St.3d 73, 76, 21 OBR 371, 373–374, 488 N.E.2d 150, 153; *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 15 OBR 408, 473 N.E.2d 798, paragraph two of the syllabus.

When applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. *In re Jane Doe 1*, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301; *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

In conclusion, we find no abuse of discretion in the trial court's allowing the jury to consider the fact that OSHA regulations exist which, if followed by the employer, would negate the allegedly defective design of the product. The OSHA regulations are relevant to the risk-benefit analysis. We also find no abuse of discretion in the trial court's allowing the jury to consider the fact that appellant's employer failed to follow the OSHA regulations. As we discussed above, under the facts of this case, the OSHA records are relevant to a consideration of whether an intervening or superseding cause, rather than a defectively designed product, proximately caused appellant's injuries.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

In his second assignment of error, appellant again asserts that the trial court erred by permitting the use of the OSHA citations. In support of this assign-

ment of error, appellant argues that "the use of the OSHA citations improperly imposed collateral estoppel" on appellant.

■ We note that appellant did not raise this argument during the proceedings below.[6] It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 463. To allow appellants to waive an argument at trial and then revive it on appeal would frustrate the orderly administration of justice. As the Ohio Supreme Court stated in *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 171, 522 N.E.2d 524, 527:

" '* * * The legitimate state interest in orderly procedure through the judicial system is well recognized as founded on the desire to avoid unnecessary delay and to discourage defendants from making erroneous records which would allow them an option to take advantage of favorable verdicts or to avoid unfavorable ones.' "

Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.

■ Assuming, *arguendo*, that the record transmitted on appeal indicated that appellant raised the collateral estoppel argument during the proceedings below, we would find no error. First, as we discussed under appellant's first assignment of error, we find no abuse of discretion in the trial court's admission of the OSHA records.

Second, we note that collateral estoppel involves issue preclusion. In *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, syllabus, the court held:

"In Ohio, the general rule is that mutuality of parties is a requisite to collateral estoppel, *or issue preclusion.* As a general principle, collateral estoppel operates only where all of the parties to the present proceedings were bound by the prior judgment. A judgment, *in order to preclude either party from relitigating an issue,* must be preclusive upon both." (Emphasis added.)

In the case at bar the jury was free to consider all relevant issues. The admission of the OSHA records did not preclude the jury from any relevant consideration.

---

6. The trial transcript indicates that the trial court and counsel engaged in numerous bench conferences to resolve various objections. The transcript, however, does not include those bench conferences. We do not know if appellant raised the collateral estoppel argument during one of the bench conferences.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

<h2 style="text-align:center">III</h2>

In his third assignment of error, appellant once again asserts that the trial court erred by permitting the use of the OSHA citations and investigation reports. In support of this assignment of error, appellant raises the following three arguments: (1) the use of the OSHA citations and investigation reports was unduly prejudicial; (2) the OSHA citations and investigative reports were irrelevant to the issues in the case; and (3) the investigative reports improperly contained hearsay. Because we rejected appellant's first and second arguments when we discussed the first assignment of error, we will limit our discussion herein to appellant's third argument—that the investigative reports improperly contained hearsay.

■ Appellant complains that the following four OSHA records, identified at trial as Defendant's Exhibits Nos. 30, 31, 33, and 34, contain inadmissible hearsay:

1. OSHA Safety and Health Accident Report by Robin Medlock and John Phillips

2. OSHA Description of Accident

3. OSHA Narrative and Rough Draft Diagram of Headsaws and Revolving Shaft

4. OSHA Worksheet, 3 Items, 6 Pages

Appellant also complains that the above OSHA records include pages in which the identities of the witnesses named in the records have been obliterated, thus limiting appellant's ability to cross-examine those witnesses.

We note that appellee introduced the OSHA records in question during the videotaped deposition of John T. Phillips, the OSHA investigator. Again, we note that the record transmitted on appeal does not include a typewritten copy of the Phillips videotaped deposition complete with the objections that appellant made during the course of the deposition. The transcript of the February 25, 1994 pretrial hearing on the motions *in limine,* however, reveals that appellant raised hearsay objections during the videotaped deposition.

Excerpts from the transcript of the February 25, 1994 hearing demonstrate the following chain of events relative to appellant's hearsay objections: (1) first, the court ruled that the hearsay must be deleted from the four OSHA records in question; (2) second, the court noted that much of the hearsay in the OSHA records might come into evidence through the witness whose name was deleted

from the records; (3) third, appellant conceded that the hearsay would not be prejudicial and withdrew his hearsay objection to the OSHA records. The excerpts provide as follows:

"THE COURT: [T]here are a number of hearsay statements within those documents and those hearsay statements aren't admissible. The documents themselves may be. * * *

"THE COURT: * * * [The OSHA records] will have to be edited to delete hearsay.

"THE COURT: * * * This particular information which has been entered is hearsay information. Neither [OSHA investigator] were [sic] eyewitnesses to the incident. * * *

"MR. CONNORS [for appellee]: Well, your Honor, I think your ruling would be premature at this time, only because on cross-examination, these questions are going to be asked of John Free. He is the employer to whom each of the investigators spoke concerning the accident. * * *

"THE COURT: Well, see, it seems to be that, that what's out as a result of hearsay in some documents is going to come in any way because there are some witnesses who remember something.

"MR. RAY [for appellant]: It's not like it's inconsistent with what we're going to have in testimony.

"THE COURT: Right.

"MR. RAY: It doesn't, it's not like it's a prejudicial component. What I get worried about, of course, is just the sweeping hearsay, but as far as this specific hearsay, as far as it being prejudicial, notwithstanding my objection, I, it doesn't bother me.

"THE COURT: Do you want to maintain the objection? You don't know the protocol. I right [sic] down S.O.R. or W.D. Do you want, if I'm not going to sustain it, I need either to overrule it or to note that you're withdrawn it.

"MR. RAY: That's a W.D."

During the course of the February 25, 1994 hearing on the motions *in limine,* the trial court emphasized that the rulings made during that hearing were preliminary.

At trial, appellant raised no objections to the OSHA documents either while the trial court played the edited videotaped Phillips deposition to the jury or immediately afterward. After the parties concluded the presentation of evidence and before the court instructed the jury, appellant objected to the OSHA records as follows:

"MR. RAY: * * * So I'll just go ahead and do a quick objection, Your Honor, consistent with the prior motion in limine and we would object to Defendant's Exhibits 30, 31, 33, 34, that's it."

The trial court, without expressly recalling that appellant had withdrawn his objection during the course of the February 25, 1994 hearing on the motions *in limine*, overruled appellant's renewed objection to the OSHA documents.

We note that both the son John O. Free and the father John Free, respectively the foreman and owner of the sawmill, gave testimony at trial concerning the OSHA investigation and the facts and circumstances surrounding the accident in question. Their testimony is consistent with the hearsay information in the OSHA records in question.

We find no merit to this assignment of error. First, we note that during the course of the February 25, 1994 pretrial hearing on the motions *in limine*, appellant withdrew his hearsay objection to the OSHA records. Second, we note that during the course of that same hearing, appellant conceded that the hearsay contained in the OSHA records was not prejudicial. We agree with appellant that the hearsay in the OSHA records did not cause appellant prejudice. We note that John O. Free and John Free gave testimony at trial consistent with the hearsay in the OSHA records.

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

In his fourth assignment of error, appellant asserts the trial court erred by permitting a jury instruction on superseding/intervening cause. Appellant argues that a superseding/intervening cause defense "does not apply where the alleged superseding/intervening cause involves the failure of the employer to guard when the product design defect involves the manufacturer's failure to guard."

Appellant contends that the superseding/intervening cause defense is only applicable where the employer interferes with a precaution that the manufacturer has taken. Appellant notes that in the case *sub judice*, the employer did not physically interfere with a precaution that the manufacturer had taken. Rather, the employer failed to provide a guard as required by OSHA regulations. According to appellant, the employer's failure to guard is insufficient to break the causal connection between appellee's failure to provide a guard and appellant's injury.

In support of this assignment of error, appellant cites *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, *Nye v. Fostoria Distrib.*

*Serv. Co.* (1992), 78 Ohio App.3d 319, 604 N.E.2d 795, and *Volter v. C. Schmidt Co.* (1991), 74 Ohio App.3d 36, 598 N.E.2d 35. Appellant notes that in *R.H. Macy & Co.*, the court mentioned that human intervention can constitute a superseding/intervening cause. We note that *R.H. Macy & Co.* did not state that a failure to act could never constitute a superseding/intervening cause.

Appellant notes that in *Nye*, the Third District held that "a company policy which was never acted upon with relation to this forklift cannot be an intervening, superseding cause." *Id.*, 78 Ohio App.3d at 323, 604 N.E.2d at 797. In *Nye*, the manufacturer attempted to prove that the employer had a policy of removing warning devices from forklifts. We can distinguish *Nye* from the case *sub judice* by noting that in *Nye* the company did not follow its *dangerous* policy, while in this case, the employer did not follow a *protective* regulation. To an extent, manufacturers should be able to depend upon employers following OSHA regulations designed to protect workers. As we discussed under appellant's first assignment of error, R.C. 2307.75(B)(4) requires consideration of the extent to which a challenged design "conformed to *any* applicable public or private product standard that was in effect when the product left the control of its manufacturer." (Emphasis added.) In *Nye*, by contrast, the Third District determined that the manufacturer should not be permitted to avoid liability by saying "it would have happened anyway if the company had followed its normal dangerous policy."

In his brief, appellant erroneously states that in *Volter*, the First District "recognized that an employer's failure to guard is not a superseding/intervening cause which will absolve a manufacturer from liability." Although we find no such statement in the *Volter* case, we find that the First District did write that "we are aware of no Ohio precedent establishing, as a rule of law, that an employer's OSHA violation for failure to equip a machine with safety devices relieves a manufacturer of strict liability." Despite this absence of precedent, the First District concluded that "a genuine question of material fact exists as to whether the failure to equip the press brake with safety devices and the violation of OSHA and ANSI standards" constituted a superseding/intervening cause. *Id.*, 74 Ohio App.3d at 43, 598 N.E.2d at 40. Thus, the First District permitted the jury to determine whether an employer's failure to follow OSHA regulations constitutes a superseding/intervening cause.

 We find no error with the fact that the trial court gave the jury a superseding/intervening cause instruction. As we discussed under appellant's first assignment of error, a defendant in a product liability case may invoke the defense of superseding/intervening causation in order to avoid liability where the superseding/intervening cause is unforeseeable and is the proximate cause of the injury or damage. The question of whether appellant's employer's failure to

follow OSHA regulations proximately caused appellant's injuries is a question of fact for the jury to determine.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

*Judgment affirmed.*

STEPHENSON, J., concurs.

HARSHA, J., dissents.

HARSHA, Judge, dissenting.

I respectfully dissent because I believe the introduction of evidence of OSHA violations by appellant's employer misdirected the jury as to the duty of safeguarding the mandrel coupler.

The majority opinion justifies the admission of OSHA violations on the grounds they are relevant to (1) the risk-benefit analysis used to determine the existence of a defective product; and (2) the issue of the employer's conduct as a superseding cause. As the majority correctly points out, a superseding cause exists only where the third party's conduct is unforeseeable. See *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313; and *Volter v. C. Schmidt Co.* (1991), 74 Ohio App.3d 36, 598 N.E.2d 35. Restatement of the Law 2d, Torts (1965), Sections 442B and 447. The only evidence in this case on that issue is that the acts of the employer or other third party were clearly foreseeable, *i.e.,* replacement of the recessed bolts with protruding ones. Thus, the employer's conduct cannot be a superseding cause as a matter of law. Furthermore, see *Volter* at 39, 598 N.E.2d at 37–38, and the cases cited therein for the proposition that an employer's safety violations do not relieve the manufacturer of its duty to safeguard as a matter of law.

In approving admission of OSHA violations as being relevant to the risk-benefit analysis, the majority cites *Knitz v. Minster Machine Co.* (Feb. 9, 1987), Lucas App. No. L–84–125, unreported, 1987 WL 6486. However, *Knitz* sanctioned the admission of OSHA *regulations,* not citations or violations, as proper evidence of feasibility of a design or the availability of alternative safeguards. *Knitz* did *not* authorize admission of evidence of an employer OSHA violation to negate a manufacturer's duty to provide a safe product. Shifting the duty from the manufacturer to the employer runs contrary to a principal purpose of strict liability in tort under Section 402A of the Restatement of Law 2d, Torts, as adopted by the Ohio Supreme Court in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. As noted in *Knitz:*

"Constant throughout the evolution of the doctrine of products liability was the judiciary's continued return in their analysis to the equities involved in each situation. In the imposition of 'strict liability' against the manufacturer, the courts, aware of the often heinous injuries that had gone uncompensated in the past, took the position that the manufacturer, and not the purchaser/user, was in the best position to prevent the introduction of defective products into the market stream. By subjecting manufacturers to potential liability, courts reasoned that manufacturers, concerned over the possibility of law suits and damage awards, would take all the necessary steps to prevent the development of defective products. Following this rationale, it was then thought that the imposition [of] liability on a manufacturer would serve as established precedent for the industry, which would inevitably lead to the development of nondefective products or, at the least, a safer product.

"Ultimately, the goal of strict liability was to have the manufacturer share the burden caused by the product-related injuries. The manufacturers were found to be better able to adopt to the shifting of the loss, since the costs could be more easily absorbed and passed through to the consumer, and since the manufacturer had the availability of insurance. Additionally, the manufacturer, by virtue of its role in the market place, was in a superior position and could more readily eleviate [*sic*] the damage to society by taking reasonably preventive measures. Vandall, Design Defect In Products Liability: Rethinking Negligence and Strict Liability (1982), 43 Ohio St.L.J. 61; Keeton, Manufacturer's Liability: The Meaning of 'Defect' in The Manufacture and Design of Products (1969), 20 Syracuse L.Rev. 559."

Furthermore, as *Knitz* warns, OSHA materials are "not to be used to misdirect a jury's attention as to who had the duty of safeguarding the machine. * * * [G]reat caution must be used in the admission of OSHA *regulations* into evidence, so that no undue prejudice will occur." (Emphasis added.) Even greater caution may be exercised when dealing with OSHA *violations*.

While the OSHA reports may have been relevant to contest the identity of the manufacturer, they should have been redacted and the jury instructed on this limited purpose. Finally, I do not believe appellant's reference to OSHA reports to identify the components and their application at the mill "opened the door" to the admission of the citations. Since the product had been disposed of by the employer, appellant was forced to use the OSHA diagrams for the limited purposes of product identification and to establish the lack of a guard.

Accordingly, I dissent.