DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Monterrey Concrete Construction, Inc. and Wallace L. Fees, appeal the judgment of the Lorain County Court of Common Pleas, which found them guilty of breach of contract with appellee, Pikewood Manor, Inc., and found appellant Fees personally liable to appellee for damages. This Court affirms.
 I. {¶ 2} Pikewood Manor, Inc. ("Pikewood") is an Ohio corporation, doing business as North Shore Homes, and is in the business of the sale and construction of modular homes. Monterrey Concrete Construction, Inc. ("Monterrey") is an Ohio corporation and is in the business of providing poured concrete foundations and basement walls. Wallace L. Fees ("Fees") and his wife are the sole shareholders of Monterrey.
 {¶ 3} In March of 1995, Pikewood contracted with a homeowner for the purchase and construction of a modular home to be located in Marblehead, Ottawa County, Ohio. In June of 1995, Pikewood orally subcontracted with Monterrey to install the concrete foundation and basement for the home. Monterrey had done business in Ottawa County and was familiar with the building code requirements of that county. In addition to pouring the concrete foundation and basement walls, Monterrey was to install a tile footer drain at the base of the foundation. Pursuant to the parties' contract, the installation of the foundation, basement walls and footer drain was to be done in accordance with Pikewood's specifications and the Ottawa County Building Code requirements.
 {¶ 4} In June of 1995, Monterrey installed the foundation, basement walls and footer drain and presented Pikewood with its invoice and warranty papers. Based upon Monterrey's representation that it had completed its work under the contract, Pikewood paid Monterrey in full. However, Pikewood later discovered that Monterrey did not complete the work in compliance with the county building code or in a workmanlike manner. Pikewood contacted appellants several times, asking them to correct the problems with the basement. In the meantime, the homeowner who purchased the home from Pikewood experienced problems with the basement foundation and walls, including large cracks in the walls which allowed water to leak into the basement.
 {¶ 5} After months passed and the defects remained, Pikewood hired another contractor to correct all the problems resulting from Monterrey's substandard work. The contractor had to excavate around the home, which required the removal of a sidewalk and wooden deck the homeowner had put in around the house, in order to access the foundation and basement walls. Upon excavation, it was found that there was insufficient stone and drainage preparation and weatherproofing around the exterior of the basement walls to meet code requirements or properly protect the basement. The contractor remedied these problems and Pikewood paid him for that work.
 {¶ 6} Pikewood was later sued by the homeowner for the damage to the basement and replacement of the sidewalk and wooden deck around the house. From that suit, the trial court ordered Pikewood to pay the homeowner for the damage. As the purchase of the home was a consumer transaction between Pikewood and the homeowner, the court trebled the damages amount it ordered Pikewood to pay the homeowner pursuant to the Ohio Consumer Sales Practices Act.
 {¶ 7} In March of 2001, Pikewood brought suit against appellants for breach of contract, fraud and piercing the corporate veil. In June of 2002, the case proceeded to a bench trial, the parties stipulated to the admissibility of the majority of the exhibits, and the rest of the exhibits were admitted without objection. On June 7, 2002, after hearing the parties' testimony and evidence presented at trial, the trial court granted judgment in favor of Pikewood against appellants for breach of contract and piercing the corporate veil. The judgment ordered Fees to pay $63,612.00 to Pikewood, plus interest and court costs. Appellants filed a motion for findings of fact and conclusions of law with the trial court and both parties proceeded to file their proposed versions of the same to the court. On May 9, 2003, the trial court filed its journal entry of its findings of fact and conclusions of law in the case.
 {¶ 8} Appellants timely appealed, setting forth five assignments of error for review. This Court will address appellants' first three assignments of error together for ease of discussion.
 II. FIRST ASSIGNMENT OF ERROR
"The trial court erred in awarding damages to appellee for breach of contract because the appellee suffered no loss from its alleged breach of contract by appellants. The Czepak Court awarded plaintiff all that was due it under its contract claim."
 SECOND ASSIGNMENT OF ERROR
"The trial court erred in its determination of damages by focusing on what pikewood was ordered to pay in a collateral case, rather than on the limittations of liability or what damages would be needed to repair the house."
 THIRD ASSIGNMENT OF ERROR
"The trial court erred in awarding treble damages as damages `which arose directly as a result' of the failure to construct the basement and foundation to code an[d] in a workmanlike manner."
 {¶ 9} In their first three assignments of error, appellants argue the trial court erred in awarding damages to Pikewood for appellants' breach of contract. Specifically, appellants argue Pikewood did not suffer any loss due to their breach of contract. They further argue the trial court did not properly grant damages by determining the cost to repair the home and the court erred in granting treble damages to Pikewood pursuant to the Ohio Consumer Sales Practices Act.
 {¶ 10} Although appellants present these arguments on appeal, they did not present them during the trial court proceedings. In fact, appellants stipulated to the majority of the exhibits admitted during trial. Moreover, Pikewood's exhibits not stipulated to by the parties were admitted without objection from appellants. Pikewood's exhibits included numerous invoices, bills and the Czepak court's judgment, and were admitted as evidence of the costs Pikewood paid to repair the basement. Appellants did not introduce evidence to refute these repair costs.
 {¶ 11} Having failed to object at trial to the introduction of Pikewood's evidence on damages, and having failed to raise in the trial court appellants' claim concerning the proper measure of damages in the case, appellants cannot now raise these issues for the first time on appeal. Northern Union Holdings Corp. v.Amber Builders, Inc. (June 12, 1973), 10th Dist. No. 73AP-47. To allow appellants to present new evidence on appeal would frustrate the orderly administration of justice. Easterday v.Gumm (Nov. 15, 1996), 4th Dist. No. 96CA2179; Lathan v.Pennington (Nov. 18, 1999), 8th Dist. No. 75198; Mark v.Mellott Mfg. Co. (1995), 106 Ohio App.3d 571, 589. Accordingly, this Court finds appellants have waived their right to raise these issues.
 {¶ 12} Appellants' first three assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR
"The trial court erred in piercing the Corporate Veil of Monterrey."
 {¶ 13} In their fourth assignment of error, appellants argue the trial court erred in piercing the corporate veil of Monterrey. This Court disagrees.
 {¶ 14} Generally, shareholders are not liable for the debts of the corporation. Belvedere Condominium Unit Owners' Assn. v.R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. However, an exception exists where a corporation's veil may be pierced and individual shareholders held liable when the following three conditions are present:
"[T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at 289.
 {¶ 15} The first prong of the Belvedere test is basically the "alter ego doctrine." See Willoway Nurseries v. Curdes
(Oct. 13, 1999), 9th Dist. No. 98CA007109. In order to satisfy this requirement, a plaintiff must prove that the individual and the corporation are fundamentally indistinguishable. Belvedere,67 Ohio St.3d at 288. Some of the factors used to determine if this standard has been met include: (1) whether corporate formalities were observed; (2) whether corporate records were kept; (3) whether corporate funds were commingled with personal funds; and (4) whether corporate property was used for a personal purpose. LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 422-423.
 {¶ 16} In the instant case, the record shows that Fees and his wife are the only two shareholders of Monterrey. It also reveals that Monterrey has never held any formal meetings nor maintained any corporate minute books, and it has never taken any formal action in writing by either a director's action or shareholder's action. Furthermore, Fees runs Monterrey without any consultation with his wife, the only other shareholder in the corporation. Such facts lead this Court to conclude that Fees' control over Monterrey is so complete that the corporation has no separate mind, will, or existence of its own.
 {¶ 17} In addition to Fees' complete control of Monterrey, the record demonstrates that Monterrey claimed to have performed the work required of Monterrey under the parties' contract by presenting its invoice and warranties to Pikewood. Moreover, Monterrey received full payment from Pikewood as a result of its representation that its work under the contract had been completed. Pikewood presented evidence that Monterrey did not complete its work according to existing code requirements, nor did it complete its work in a workmanlike manner. The homeowner who purchased the home from Pikewood experienced problems with the basement foundation and walls, including large cracks in the walls which allowed water to enter the basement. The record also shows the worksite had been backfilled before Monterrey's work was inspected.
 {¶ 18} The record further demonstrates that, after repeated unsuccessful attempts to get Monterrey to correct its unsatisfactory work, Pikewood hired another contractor to correct the problems with the basement. When the contractor excavated the worksite, it was discovered that Monterrey did not put sufficient stone with regard to the drainage system and did not adequately weatherproof the exterior of the basement walls. This evidence demonstrated Monterrey's work was not done in a workmanlike manner and did not comply with code requirements. Consequently, the Ottawa County Building Department found Monterrey's work to be unacceptable pursuant to the Ottawa County Building Code.
 {¶ 19} The record also illustrates that, as a result of Monterrey's failure to construct the basement to code and in a workmanlike manner, Pikewood was forced to remedy Monterrey's substandard work at a great economic expense to Pikewood. The contractor hired to correct the defects had to tear up both a sidewalk and a wooden deck the homeowner had put around the home in order to excavate the worksite. The contractor then had to put the proper amount of stone in, as well as install a new drainage system and weatherproof the exterior of the basement walls to make the construction comply with code requirements. Pikewood paid the contractor $5,502.00 to correct the basement defects.
 {¶ 20} In addition, the homeowner sued Pikewood for Monterrey's unworkmanlike acts. The trial court ordered Pikewood to pay treble damages for replacement of the sidewalk and wooden deck which Pikewood had to remove to correct Monterrey's substandard work, as well as treble damages for correction of the stained and damaged basement walls, in the amount of $55,953.26 pursuant to the Ohio Consumer Sales Practices Act. Again, this Court notes that judgment entry was stipulated to and admitted as evidence of Pikewood's damages in the instant case. As found in the first three assignments of error, appellants have waived their right to argue these damages on appeal. Furthermore, the trial court's judgment entry in this case held that Pikewood was found in violation of the Ohio Consumer Sales Practices Act due to Fees' conduct and stated the following:
"Plaintiff was sued by the homeowner in the Lorain County Court of Common Pleas and was required to pay certain expenses to the homeowner which arose directly as a result of the failure to construct the basement and foundation to code by Monterrey and the failure to construct the basement and foundation in a workmanlike manner. Because the matter was a consumer transaction between Plaintiff and the homeowner, the amounts awarded to the homeowner were trebled pursuant to the Ohio Consumer Sales Practices Act.
 "* * *
"Defendant Wallace Fees used his control over Monterrey in such a manner to commit illegal acts resulting in the injury or damages to Plaintiff in this matter."
 {¶ 21} This Court notes the record also provides competent, credible evidence that Pikewood was held liable for Fees' failure to honor the warranties on his work as Fees did not remedy the problems with the basement, despite Pikewood's repeated requests that he do so. In light of these facts, this Court finds that there was competent, credible evidence presented to the trial court to meet all three prongs of the Belvedere test and establish Fees' individual liability to Pikewood.
 {¶ 22} This Court finds the trial court did not err in piercing the corporate veil of Monterrey and holding Fees personally liable to Pikewood for Monterrey's breach of contract. Appellants' fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR
"The trial court's findings of fact and conclusions of law are against the manifest weight of the evidence."
 {¶ 23} In their fifth assignment of error, appellants argue the trial court's findings of fact and conclusions of law are against the manifest weight of the evidence. This Court disagrees.
 {¶ 24} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederickv. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286. In determining whether a judgment is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340.
Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 25} After a thorough review of the record, this Court cannot find the trial court's findings of fact and conclusions of law are against the manifest weight of the evidence. This Court does recognize that conflicting testimony was presented in this case. However, it is well settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. In the instant case, this Court cannot conclude that the trial court lost its way and created a manifest miscarriage of justice when it found appellants liable to Pikewood for their breach of the parties' contract and granted judgment for Pikewood against Fees in the amount of $63,612.00, with interest and costs. Appellants' fifth assignment of error is overruled.
 III. {¶ 26} Appellants' five assignments of error are overruled. Accordingly, the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, J., concurs.