JOURNAL ENTRY AND OPINION
{¶ 1} Donnell Walton ("Walton") appeals the jury verdict finding him guilty of burglary. Walton argues that the State of Ohio failed to present sufficient evidence to sustain a conviction; that the jury verdict is against the manifest weight of the evidence; and that the trial court improperly instructed the jury. For the following reasons, we affirm.
 {¶ 2} This case arises from an incident that occurred at a double home in Cleveland, Ohio. Walton resided in the upstairs portion of the home and the victim, Letoyia Davis ("Davis") resided in the lower portion of the home. Walton and Davis are cousins and had been living at the residence for several years.
 {¶ 3} On December 3, 2003, Davis testified that she returned home from work as a home health aide and began preparing for bed. Davis had only her nurse's shirt on and was sitting in her bedroom talking on the telephone when she heard Walton banging on her back door. Davis testified that she heard Walton kick in her back door and proceed through her residence. Walton then pushed open Davis's bedroom door and walked towards her with his arms outstretched. Davis testified that Walton's eyes were glassy and that he resembled a zombie.
 {¶ 4} Davis began screaming and fled from her bedroom and out of the house. Davis testified that as she fled, she looked for clothes to put on, but she noticed Walton coming towards her, so she fled the house wearing only her nurse's shirt. Davis told her friend, with whom she had been speaking with on the telephone, to call her father. Davis hung up the phone, called 911, and then proceeded to a neighbor's house to wait for police.
 {¶ 5} Officers arrived and spoke with Davis. During the course of taking her statement, Walton came outside. Davis identified Walton as the individual who had kicked in her door and entered her bedroom. Officers placed Walton under arrest and transported him to Cleveland's central processing unit. The arresting officer testified that he believed Walton had been using PCP prior to his arrest because his eyes were glassy, and he had become combative during the booking process.
 {¶ 6} Walton testified that on the night of the incident, he had smelled fumes and only kicked in Davis's door to make sure that she was all right.
 {¶ 7} The Cuyahoga County Grand Jury returned an indictment charging Walton with aggravated burglary, a first-degree felony. The jury returned a verdict of guilty to the lesser included offense of burglary, a second-degree felony. The trial court then sentenced Walton to two years in prison. Walton appeals raising the three assignments of error contained in the appendix to this opinion.
 {¶ 8} In his first assignment of error, Walton argues that the State failed to present sufficient evidence that he committed the crime of burglary. In his second assignment of error, Walton argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 9} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261 as follows:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 10} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259 paragraph 2 of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 11} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 12} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465. (Citation omitted.)
 {¶ 13} The jury found Walton guilty of burglary pursuant to R.C.2911.12(A)(2), which provides, "no person, by force, stealth, or deception, shall * * * trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 14} In this case, Davis testified that she lived by herself in the downstairs portion of the house. She further testified that on December 3, 2003, she was sitting in her bedroom talking on the phone when Walton kicked in her back door and pushed open her bedroom door. Davis testified that she had on only a nursing shirt and, when Walton entered her room, he had on only a tank top and boxer shorts. Davis testified that she screamed, fled the house, and called 911. Davis told police that Walton's eyes were glassy and that once he opened her bedroom door, he had walked towards her with his arms outstretched. Davis testified that Walton did not say anything to her once inside her residence.
 {¶ 15} Davis's friend, Monique Brown ("Brown"), with whom she had been speaking with on the telephone, testified that she heard Davis screaming. Brown also testified that Davis told her that Walton had just kicked in her back door.
 {¶ 16} The arresting officer testified that he believed Walton had been using PCP prior to his arrest.
 {¶ 17} Additionally, Raymond Walton, who is Walton's brother and Davis's cousin, testified that after this incident occurred, he heard his brother make a threatening comment about Davis.
 {¶ 18} In response, Walton admitted that he kicked in Davis's door, but claimed that when he did so, he had no intent to commit a criminal act. Walton testified that he had been sleeping earlier in the evening but that loud music woke him up. Walton then stated that he smelled fumes and thought that the house may have been on fire. On cross-examination, Walton was unable to describe the fumes he smelled. Walton admitted that he did not see smoke or flames, but claimed at one point that his smoke detector had gone off. Walton testified that he tried knocking on Davis's door and windows but when she didn't answer, he became alarmed and kicked in the back door. Walton also admitted that he did not see smoke or flames inside Davis's portion of the house. Walton claimed to not know why Davis began screaming or why she fled from the house.
 {¶ 19} The testimony of Davis and Brown contradicts Walton's testimony. Both women testified that they did not hear any loud music and, additionally, Davis testified that she did not smell any smoke or fumes. Furthermore, Walton's assertion that he was concerned for Davis's safety was refuted by his failure to say anything to her once inside her bedroom. Additionally, the State presented evidence that Walton had entered Davis's residence to commit a criminal act. The State argued that both Davis and the arresting officer believed that Walton had been using PCP on the night in question and, therefore, he had intended to commit the offense of disorderly conduct once inside Davis's home.
 {¶ 20} Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found all the elements of burglary in this case. Therefore, there was sufficient evidence to support Walton's conviction for burglary. We also find that the jury did not lose its way in inferring that Walton kicked in Davis's door in order to commit a criminal offense. Accordingly, Walton's conviction was not against the manifest weight of the evidence.
 {¶ 21} Walton's first and second assignments of error are overruled.
 {¶ 22} In his third and final assignment of error, Walton argues that the trial court improperly instructed the jury of a crime that was not a lesser included offense of the original aggravated burglary charge. We disagree.
 {¶ 23} We first note that Walton's trial counsel failed to object to the jury instruction classifying R.C. 2911.12(A)(2) as a lesser included offense of R.C. 2911.11. Moreover, Walton's trial counsel agreed with the trial court that R.C. 2911.12(A)(2) was a lesser included offense of R.C. 2911.11. Because Walton failed to raise this issue before the trial court, he waived the issue on appeal. Mark v. Mellot Mfg. Co., Inc.
(1995), 106 Ohio App.3d 571, 589. "An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at the time when such error could have been avoided or corrected by the trial court." State v. Childs (1968), 14 Ohio St.2d 56. Walton has therefore waived all but plain error. State v. Hartman,93 Ohio St.3d 274, 289, 2001-Ohio-1580. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, at paragraph three of the syllabus. We decline to find plain error in this case.
 {¶ 24} Nonetheless, we find the trial court's jury instructions to be proper.
 {¶ 25} The standard of review for jury instructions is whether the trial court abused its discretion under the facts and circumstances in the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68. "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218.
 {¶ 26} The Ohio Supreme Court outlined the test to be applied to determine whether one offense constitutes a lesser included offense of another:
"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense * * *; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem
(1988), 40 Ohio St.3d 205, at paragraph 3 of the syllabus.
 {¶ 27} In examining the instant case, it is apparent that burglary carries a lesser penalty than aggravated burglary; aggravated burglary cannot be committed without first committing burglary; and aggravated burglary requires proof of the additional element of either physical harm or an attempt to inflict physical harm on another. Therefore, the trial court did not abuse its discretion when it instructed the jury that burglary, R.C. 2911.12(A)(2) was a lesser included offense of aggravated burglary, R.C. 2911.11.
 {¶ 28} Walton's third assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., P.J., And Sweeney, J., concur.
 Appendix A Assignments of Error:
 "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT APPELLANTCOMMITTED THIS CRIME.
 II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE.
 III. THE TRIAL COURT ERRED WHEN IT IMPROPERLY INSTRUCTED THE JURY OF ACRIME THAT WAS NOT A LESSER INCLUDED OFFENSE OF THE ORIGINAL AGGRAVATEDBURGLARY CHARGE."