[Cite as *Thacker v. Day*, 2013-Ohio-187.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

KIMBERLY A. THACKER                       :

     Plaintiff-Appellant               :       C.A. CASE NO.   25265

v.                                        :       T.C. NO.   10CV8368

MARK W. DAY, D.O., et al.                 :       (Civil appeal from
                                             Common Pleas Court)

     Defendants-Appellees              :

                                           :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    25th    day of    January  , 2013.

. . . . . . . . . .

JONATHAN HOLLINGSWORTH, Atty. Reg. No. 0022976, 137 N. Main Street, Suite 1002, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

KAREN L. CLOUSE, Atty. Reg. No. 0037294 and MARYELLEN C. SPIRITO, Atty. Reg. No. 0007617 and PATRICK F. SMITH, Atty. Reg. No. 0024997, 2075 Marble Cliff Office Park, Columbus, Ohio 43215
        Attorneys for Defendants-Appellees, Mark W. Day, D.O. and Generations & Gynecology, Inc., fka Springboro Obstetrics & Gynecology, Inc.

CHARLES F. SHANE, Atty. Reg. No. 0062494 and HOWARD P. KRISHER, Atty. Reg. No. 0009088 and KIRSTIE N. YOUNG, Atty. Reg. No. 0084007 400 PNC Center, 6 N. Main      Street, Dayton, Ohio 45402
        Attorneys for Defendants-Appellees, Lynn M. Powers, D.O. and Southview Medical

Center

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Plaintiff-appellant Kimberley A. Thacker (hereinafter "Thacker") appeals the judgment of the Montgomery County Court of Common Pleas, General Division, sustaining the motion for summary judgment of defendant-appellee Dr. Mark W. Day, D.O. (hereinafter "Dr. Day") in a written decision issued on May 30, 2012.  Thacker filed a timely notice of appeal with this Court on June 28, 2012.

{¶ 2}    The record establishes that Thacker first came under the care and supervision of Dr. Day on April 23, 2007.  At that time, Dr. Day was the Medical Director of Residency and care provider at Southview Women's Care, a clinic operated by Southview Hospital.  Prior to her interaction with Dr. Day, Thacker had an extensive surgical history consisting of numerous abdominal and pelvic operative procedures, including a total abdominal hysterectomy and a right salpingo-oopherectomy (removal of the right ovary and tube).

{¶ 3}    Upon her arrival at Southview Hospital on April 23, 2007, Thacker suffered from a confirmed left ovarian cyst and complained of abdominal/pelvic pain and distention. In order to correct her condition, Dr. Day planned to operate on Thacker and remove her left cystic ovary and tube (left-salpingo-oopherectomy).  Ultimately, on May 7, 2007, Dr. Day performed a left-salpingo-oopherectomy, as well as lysis of adhesions involving Thacker's pelvis and bowel (enterolysis).  Adhesions are essentially scar tissue which can cause abdominal and pelvic structures to adhere to one another, in turn causing pain and discomfort.  The lysis of adhesions performed by Dr. Day involved the cutting away of the

scar tissue around Thacker's abdominal region and pelvis. Because he was worried about the risk of adhesions considering her prior surgical history, Dr. Day asked general surgeon, Dr. Andrew Gabriel, to be on standby during the May 7, 2007, procedure in case his assistance was needed. As it turned out, Dr. Day was able to perform the multi-faceted operation without requiring any assistance from Dr. Gabriel.

{¶ 4} Following the May 7, 2007, procedure, Thacker developed a painful blood clot in her rectal area. On May 30, 2007, Dr. Day performed surgery on Thacker to remove the blood clot. During the surgery, an incidental perforation of Thacker's bladder occurred but was corrected during the operation by a urologist contacted by Dr. Day.

{¶ 5} Throughout the remainder of 2007 and into 2008, Thacker complained of continuing abdominal pain. Dr. Day stated in his deposition that he believed her pain was caused by intra-pelvic and intra-abdominal adhesions he observed during the initial surgery he performed on May 7, 2007. As a result, Dr. Day formulated a surgery plan to perform additional lysis of Thacker's adhesions. In order to accomplish this goal, Dr. Day obtained a consult from Dr. Gabriel's general surgery resident, Dr. Reichert, regarding the proposed surgery. Dr. Day also consulted with a vascular surgeon, Dr. Mark Gazall, before performing the second lysis of adhesions on Thacker. Additionally, the record establishes that Dr. Gabriel was on standby at the request of Dr. Day during the surgery which was performed on June 30, 2008.

{¶ 6} Approximately five weeks later on August 11, 2008, Dr. Day diagnosed Thacker with three fistulas during a routine post-operative visit. A fistula is an abnormal duct or passage from an abscess, cavity, or hollow organ to the body surface or another

hollow organ. The fistulas that developed were to the vaginal canal, the bladder, and the skin. The fistulas to the vaginal canal and bladder healed on their own, but the skin fistula required long-term medical attention, ultimately resulting in surgical treatment at the Cleveland Clinic.

{¶ 7} On October 20, 2010, Thacker filed a complaint alleging medical malpractice against Dr. Day and his practice, Generations Obstetrics & Gynecology, formerly known as Springboro Obstetrics & Gynecology, Inc., as well as Southview Medical Center and Dr. Lynn Powers. It appears that Thacker's claim of medical malpractice is only raised in connection with the surgery performed by Dr. Day on June 30, 2008. After the parties engaged in significant discovery and depositions were concluded, all defendants, including Dr. Day, moved for summary judgment against Thacker. On May 30, 2012, the trial court issued a decision granting summary judgment in favor of all of the defendants. The trial court concluded that the record failed to set forth any expert testimony that a deviation from the standard of care by Dr. Day was the cause of Thacker's injuries.

{¶ 8} It is from this judgment that Thacker now appeals, but only in regards to Dr. Day, Generations Obstetrics & Gynecology, and Southview Medical Center. Thacker is not appealing the trial court's judgment in favor of Dr. Powers.

{¶ 9} Thacker's first assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED FOR TRIAL WITH RESPECT TO THE 'CAUSATION' ELEMENT OF PLAINTIFF-APPELLANT'S CLAIM AGAINST DEFENDANT-APPELLEE DR. DAY (I.E., WHEN IT DETERMINED, AS A MATTER

OF LAW, THAT DR. DAY'S CONDUCT DID NOT PROXIMATELY CAUSE THE HARM SUFFERED BY PLAINTIFF)."

{¶ 11}   We review a summary judgment de novo by independently reviewing the judgment, without deference to the trial court's determination.   *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588, 641 N.E.2d 265 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs*., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).   We apply the same standard as the trial court and must affirm the judgment if any grounds the movant raised in the trial court support it.   *Coventry Twp. v. Ecker,* 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327 (9th Dist.1995).

{¶ 12}   Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party.   *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).   Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.   *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358-59, 604 N.E.2d 138 (1992), quoting *Norris v. Ohio Std. Oil Co.,* 70

Ohio St.2d 1, 2, 433 N.E.2d 615 (1982).

{¶ 13} When a party moves for summary judgment on the ground that the non-moving party cannot prove its case, the movant bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293.

{¶ 14} In her first assignment, Thacker contends that the trial court erred when it found that she presented insufficient expert testimony to establish that Dr. Day's alleged negligence in performing the lysis of adhesions surgery on June 30, 2008, proximately caused the fistulas she suffered approximately five weeks after the surgery.

{¶ 15} To succeed on a malpractice claim, a plaintiff must demonstrate through expert testimony that the physician's conduct fell below the "prevailing standard of care." *Ramage v. Central Ohio Emergency Servs.*, 64 Oho St.3d 97, 102, 592 N.E.2d 828 (1992). "Whether negligence exists is determined by the relevant standard of conduct for the physician. That standard is proved through expert testimony." *Berdyck v. Shinde*, 66 Ohio St.3d 573, 579, 613 N.E.2d 1014 (1993), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976). *Bruni* also requires expert testimony on the issue of causation.

{¶ 16} Under Ohio Law, in order to present a prima facie claim of medical malpractice, a plaintiff must establish: 1) the standard of care, as generally shown through expert testimony; 2) the failure of the defendant to meet the requisite standard of care; and 3)

a direct causal connection between the medically negligent act and the injury sustained. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, ¶ 1 of the syllabus. "[P]hysicians are said to owe patients a legal duty to use recognized standards of professional knowledge and skill." *Ryne v. Garvey*, 87 Ohio App.3d 145, 155, 621 N.E.2d 1320 (2d Dist.1993). A plaintiff proves a breach of duty by showing that the physician failed to act in accordance with those established norms. *Id*.

{¶ 17} In the instant case, Thacker's sole medical expert was John C. Evanko, M.D. Dr. Evanko testified in the area of standard of care and causation. Dr. Evanko was deposed by the defendants on March 8, 2012. In preparation for his deposition, Dr. Evanko testified that he reviewed Thacker's relevant medical records, as well as the deposition of Dr. Day. Dr. Evanko testified that Dr. Day deviated from the standard of care by failing to have a general surgeon perform the June 30, 2008 surgery, rather than Dr. Day, an obstetrician/gynecologist. Dr. Evanko further testified that other than performing the June 30, 2008, surgery himself, Dr. Day did not deviate from the standard of care in any way.

{¶ 18} We note, however, that the record establishes that Dr. Evanko did not opine that the June 30, 2008, surgery should not have been performed, only that it should have been performed by a general surgeon. On this point, Dr. Evanko testified as follows:

> Defense Counsel: Okay. So the point I'm trying to make is, it's not the fact surgery was done, *it's the fact that you believe the surgery on June 30, 2008 should have been done by a general surgeon instead of an OB-GYN?*
>
> Dr. Evanko: *Yes. That's where the deviation from the standard of care occurred.* And again, I know I'm not supposed to go on, but the thing is, a

general surgeon operates on the bowel all the time. So ***perhaps*** *the technique would have been a little more meticulous or fine or what have you. A gynecologist does perform lysis of adhesions, but not to the degree or the extent or have that experience of working with the bowels all the time.* General surgeons, all they operate is on bowels. So that's why I think they're the best trained or the best skilled at taking care of this condition.

{¶ 19} Regarding whether he agreed with Dr. Day's diagnosis which led to the June 30, 2008, surgery, Dr. Evanko testified as follows:

Defense Counsel: Do you have an opinion that [Thacker] was experiencing the pain and nausea, whatever her symptoms were at the time, from something other than adhesions?

Dr. Evanko: From the records, no. I believe from what I read from [Dr. Day's] notes *he felt adhesions were the cause of that, and that's why he felt the surgery was indicated and he planned to perform the surgery.*

Q: Right. And do you think he was wrong in feeling that the adhesions were causing her problems?

A: *I believe this is a classic presentation of someone with multiple bowel adhesions who has a lot of pain, discomfort. *** I would have thought of the same thing.*

***

Q: Okay. *And there's nothing in the record that indicates that Dr. Day in terms of his technique and how he did it, that he [didn't] lyse the adhesions*

*reasonably or appropriately; correct?*

A: *There's nothing in his dictation that would say that.*

Q: Okay. His dictation seems to be that his lysis of adhesions, the pelvic and abdominal adhesions, *were done in a reasonable and appropriate way; correct?*

A: *Yes, according to his dictation.*

{¶ 20} With respect to the issue of causation, Dr. Evanko offered the following testimony:

Defense Counsel: Okay. And I'm assuming that just because she developed the fistulas, you cannot say that [Dr. Day's] technique was inappropriate or incorrect; true?

Dr. Evanko: *I can't say that.*

*** 

Q: Okay. And as a result of that bowel surgeon not being there, *you believe these fistulas developed, that's the reason that the fistulas developed?*

A: *I don't believe that.*

{¶ 21} Thus, the relevant question is whether the fact that Dr. Day failed to have a general surgeon perform the surgery, equates with a conclusion that there is a direct causal connection between the failure to utilize a general surgeon and the injury sustained. On the issue of causation, Dr. Evanko testified as follows:

Defense Counsel: Okay. But you can't –

Dr. Evanko: If that clarifies it.

Defense Counsel: It does. *But you can't say to a reasonable probability that if a general surgeon had done this surgery the fistulas would not have developed, true?*

A: *Correct*.

**{¶ 22}** We also note that additional questions were asked of Dr. Evanko regarding whether Dr. Day could have met the standard of care if he performed the June 30, 2008, surgery and not a general surgeon:

Q: And I want to go back and make sure of one more thing. I want you to assume that a surgeon who knew this patient, a general surgeon who had taken care of this patient before was asked to do a surgical consult for this lysis of adhesions, did a surgical consult, and was on standby at the time of this surgery, *would that meet the standard of care if Dr. Day had all that*?

A: *Yes, I believe that would have met the standard of care.*

**{¶ 23}** From the above testimony provided during his deposition, it is clear that Dr. Evanko did not testify that the alleged deviation from the standard of care, failing to have a general surgeon perform the June 30, 2008, surgery, directly and proximately caused Thacker's fistulas to occur. Dr. Evanko only connected the surgery itself with the occurrence of the fistulas, not any negligent conduct by Dr.Day in the performance of the surgery that caused the fistulas to develop. "At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by [the] defendant's negligence." *Shumaker v. Oliver B. Cannon & Sons, Inc.,* 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (1986). In the instant case, Dr. Evanko did not testify that Dr. Day's negligence

"more likely than not" caused Thacker's injuries. Rather, Dr. Evanko testified *only* that the fistulas were connected to, or initiated by, the surgery. Moreover, Dr. Evanko testified that the fistulas could have occurred even if the standard of care had been met and a general surgeon had performed the surgery.

> Defense Counsel: And again, you can't say to a probability that this could have happened even if a general surgeon had lysed these adhesions; correct?
>
> Dr. Evanko: *This could have happened, correct.*

{¶ 24} In her brief, Thacker makes a number of unsupported allegations regarding her assertion that Dr. Day's decision to perform the surgery on June 30, 2008, fell below the standard of care. We note that Thacker attempts to criticize Dr. Day by questioning his decision to perform the June 30, 2008, surgery at all. Dr. Evanko, however, testified that the purpose of the surgery was to remove the abdominal and pelvic adhesions and to alleviate the pain that Thacker complained of at the time. Significantly, Dr. Evanko specifically testified that he "would have done the same thing." Thacker also asserts that Dr. Day negligently cut her bowel during the June 30, 2008, surgery which led directly to the formation of the fistulas. Dr. Evanko, however, testified that there was no evidence in the record that Dr. Day cut or perforated Thacker's bowels during the surgery. The testimony of Dr. Evanko merely establishes that the surgery performed by Dr. Day on June 30, 2008, and the occurrence of the fistulas were "connected." Significantly, Dr. Evanko's testimony does not meet the causation requirement of medical negligence. As noted by the trial court, "[t]he fact that the surgery caused the fistulas does not mean that Dr. Day's performance of

the surgery himself *as opposed to a general surgeon*, which in Dr. Evanko's opinion would have met the standard of care, was the cause of the fistulas."

**{¶ 25}** Additionally, we note that the record establishes that a general surgeon was consulted prior to the surgery and that a general surgeon was on standby for the surgery. Dr. Evanko testified that this "met" Dr. Day's standard of care. In this instance, Thacker attempts to argue that Dr. Day ignored the conditions proposed by Dr. Reichert, the general surgery resident under the supervision of Dr. Gabriel. Specifically, Thacker asserts that on consult, Dr. Reichert essentially suggested that Dr. Day wait to perform the surgery until further discussions could be held with the general surgery department, but Dr. Day went ahead and performed the surgery anyway. This assertion is not supported by the record. The record establishes that because Thacker's deep vein thrombosis was a concern to the general surgeons, surgery was, in fact, delayed from February of 2008 until June of 2008, when a separate vascular surgery consult was obtained from Dr. Gazall. Moreover, the record establishes that Dr. Day continued to consult with the general surgeons up to and including the day of surgery.

**{¶ 26}** Upon review, we conclude that the trial court did not err when it granted summary judgment in favor of Dr. Day and Generations Obstetrics and Gynecology. From the record it is clear that the testimony provided by plaintiff's expert, Dr. Evanko, failed to demonstrate that there is evidence from which reasonable minds could find in Thacker's favor on the element of causation with respect to the surgery of June 30, 2008. Thacker failed to adduce any evidence that Dr. Day's alleged negligence was the proximate cause of the fistulas.

{¶ 27}   Thacker's first assignment of error is overruled.

{¶ 28}   Thacker's second assignment of error is as follows:

{¶ 29}   "THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER THE 'LOSS OF CHANCE' THEORY."

{¶ 30}   In her second and final assignment of error, Thacker argues that the trial court erred when it failed to consider the "loss of chance" theory of recovery before granting summary judgment in favor of all defendants.   It is undisputed, however, that Thacker failed to raise this argument before the trial court.   It is axiomatic that an appellate court will not consider legal arguments raised on appeal for the first time. *State v. Skilwies*, 2d Dist. Montgomery No. 17077, 1999 WL 6507 (January 8, 1999), citing *Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995).   Thus, we must conclude that Thacker waived this argument by failing to raise it in the trial court.

{¶ 31}   Thacker's second and final assignment of error is overruled.

{¶ 32}   All of Thacker's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

{¶ 33}   This is much more of a procedural case concerning summary judgment than a malpractice case.   The trial court said: "To the extent Plaintiff's Complaint alleges that the Defendants were negligent in connection with the prior surgeries prior to the June 30, 2008, summary judgment is granted in all of the Defendants' favor in this regard."   (sic,

Decision, pg. 6)

{¶ 34} Concerning the June 30 surgery, the trial court found "that there is no evidence from which reasonable minds could find that any alleged deviation from the standard of care caused the injury complained of . . . [thus] the court need not address whether there is a genuine issue whether Dr. Day deviated from the standard of care." (Decision, pg. 9). In its conclusion, the court found "that there is no evidence from which reasonable minds could find in plaintiff's favor on the element of causation." (Decision, pg. 15).

{¶ 35} The matter on appeal is, therefore, the court's holding that, even assuming negligence on June 30, Dr. Day met his initial summary judgment motion burden and the plaintiff did not rebut it.

{¶ 36} There was no evidentiary material before the trial court tending to prove that any alleged negligence by Dr. Day was the proximate cause of the injury. Even if the surgeries were the proximate cause of the injuries, which, at least, is a genuine issue, the plaintiff at trial must show more than a post hoc ergo propter hoc relationship;[1] but rather that the doctor committed negligence in the surgery and that the negligence (i.e., not just the surgery) was the proximate cause of the injuries.

{¶ 37} To meet his initial burden, Dr. Day did not present affirmative evidence that any alleged negligence failed to proximately cause the injuries; rather, he submitted evidence that the plaintiff's sole expert would *not* be able to demonstrate a proximate relationship

---

[1]Something more than "a relatively strained temporal nexus. . ." *Howard v. Bobby D. Thompson, Inc.,* 2d Dist. Montgomery No. 24357, 2011-Ohio-3503, ¶ 53.

between the alleged negligence and the injury.

{¶ 38} The legal question is whether a summary judgment movant meets his initial burden by demonstrating through plaintiff's expert that the plaintiff does not have sufficient evidence to create a genuine issue of material fact - or does the movant have to supply affirmative evidence that there is no proximate cause (i.e., showing affirmatively that the plaintiff has insufficient evidence to create a genuine issue of material fact versus showing affirmatively that defendant-movant has evidence that the plaintiff will not be able to meet its trial burden).

{¶ 39} "The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim *or* by demonstrating 'an absence of evidence to support the non-moving party's case.' " (Emphasis added). *The Lubrizol Corp. v. Natl. Union Fire Ins. Co.*, 200 Fed. Appx. 555 (6th Cir. 2006), *3, following Ohio law and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶ 40} I agree with the majority that the testimony of the sole expert of the plaintiff demonstrated the absence of evidence to support the plaintiff's case.

. . . . . . . . . .

Copies mailed to:

Jonathan Hollingsworth
Karen L. Clouse
Maryellen C. Spirito
Patrick F. Smith
Charles F. Shane
Howard P. Krisher
Kirstie N. Young
Hon. Dennis J. Langer